LORD v. WILKINSON *et al.*

*Stolen bonds — liability of purchaser — good faith — finding of jury.*

In an action to recover the value of government bonds stolen from the plaintiff, and shown to have been subsequently purchased and sold by defendants, a firm of brokers, evidence was given on behalf of plaintiff that a hand-bill announcing the loss of the bonds and describing them, had been left with the firm, and the attention of the managing partner called thereto, and that he read the hand-bill. The evidence on behalf of the defendants was proved to be in part untrue, and it was contradictory. *Held*, that the submission to the jury of the question of good faith on the part of the defendants in dealing in the bonds, was proper, and the jury were justified in finding that defendants acted in bad faith, and were liable.

EXCEPTIONS ordered to be heard in the first instance at special term after trial, and verdict in favor of plaintiff. The facts appear in the opinion.

*W. H. Shankland,* for plaintiff.

*H. Riegel,* for defendant.

MILLER, P. J. This action was brought by the plaintiff to recover the value of two bonds of the United States of the denomination of one hundred dollars each, which had been stolen from a safe where they had been deposited for safe-keeping, together with others on the night of January 1, 1867. In the month of February following, one of these bonds were purchased and disposed of by the defendants who were bankers and brokers at Syracuse. The other bond was purchased and sold in August following. The case was tried before Mr. Justice MURRAY and a jury at the Cortland county circuit, in October, 1871. The defendants moved for a

nonsuit at the close of the evidence of the plaintiff, upon the ground that sufficient evidence of bad faith on the part of the defendants had not been given to the jury, which motion was denied and an exception taken by the defendants. At the close of the proofs the defendants again moved that the complaint be dismissed, and the jury be instructed to find a verdict in favor of the defendants upon the same, which was also denied and an exception duly taken. The jury found a verdict in favor of the plaintiff for the amount claimed, and the court ordered the exceptions to be heard in the first instance at general term.

The only question raised by the defendants is, that the plaintiff gave no evidence which would authorize a jury to find that the purchase of either of the bonds was made in bad faith.

In this position I think that the defendants' counsel is in error, and that there was sufficient evidence for the consideration of the jury, upon the question whether the defendants had acted in bad faith. There was evidence tending to show that the defendants had purchased these bonds which had the coupons cut off, and that prior to the purchase and on the 9th of February, hand-bills were issued in which a minute description was given of the lost bonds, one of which was shown to and left with one of the defendants, J. Forman Wilkinson, the active partner in the defendants' office, and his attention particularly called to the same and he warned against the purchase.

It further appeared that between the 9th and 12th day of February, the defendants examined the hand-bill carefully and found advertised what they claimed to have overlooked, a two hundred dollar Cortland county bond, which belonged to the McGraws, from whose safe it was stolen at the same time as the bonds of the plaintiff, and on the 12th, wrote to the McGraws to the above effect. And there is proof to show that one of the defendants admitted to the plaintiff that on the 14th of February, two days after he had written the letter to the McGraws, stating that he had carefully perused the hand-bill, that he had purchased one of the two hundred dollar bonds in controversy.

It was also proved that on the 14th of August following, then having knowledge and notice, the defendants sold another bond to their brokers in New York.

In addition to these facts, there was evidence upon the trial to contradict some of the statements by one of the defendants.

The answer, among other things, states that the defendants kept no record of the securities which they bought and sold, and that they have no knowledge or information sufficient to form a belief that they sold to their brokers the securities described in the complaint, and therefore denies this allegation. The proof on the trial showed that they kept a record; that the bonds were recorded and sold to their brokers in New York. The defendants also denied the fact that he had sent one of the bonds to their brokers, although they had a record of it and afterward stipulated to admit it.

One of the defendants also testified that in February, 1867, they kept no record of bonds purchased, but, afterward, upon his cross-examination, admitted that they did keep such records.

There were also some other contradictions and alleged evasions, which it was claimed was not consistent with good faith and which might tend to establish bad faith.

Conceding that there were strong reasons to believe that the purchase of the bonds was made in the ordinary course of the defendants' business, for a full consideration and in entire good faith, yet, after all, it was a question as to the credibility to be given to the defendants' evidence, after a careful consideration of all the circumstances of the case. The testimony was, to say the least, conflicting, and it was for the jury to determine where the truth was. There was clearly sufficient evidence to submit the case to the jury, and, there being no error, the motion for a new trial must be denied, and judgment must be rendered on the verdict for the plaintiff, with costs.

*So ordered.*